Peoic, J.
It appears from the agreed ease that, before and at the commencement of the several suits in replevin, the property in and right to the possession of the hogs in controversy, were in thé plaintiff; and he may well maintain the present action unless that property and right were divested by the proceedings in those replevin suits. In those suits the plaintiffs therein claimed the general property and right of present possession to the hogs then and now in controversy, and after seizure, executed a bond under the statute to the defendant, who also claimed to be general owner, in double the appraised value; whereupon the hogs were delivered to the plaintiffs, and *werc by them subsequently sold to the defendant in this action. The jury, upon the trial of the replevin suits, found the right of property and of possession, at the commencement of said several actions, to have been in the defendant, and found verdicts in his favor for the full value of the hogs, upon which judgments were rendered. Those judgments are still un *379 satisfied, and, owing to the insolvency of the plaintiffs and their sureties, altogether valueless.
The present plaintiff insists that nothing less than payment or-satisfaction of those judgements could divest his property in the hogs replevied ; while it is claimed, on the part'of the defendant, that the giving of the bond for double the appraised value of the-property replevied, followed by a delivery of the hogs to the plaintiffs in replevin, and the rendition of judgments in favor of the defendant in said actions, for the full value of the hogs, did, under the statute, and as between the parties to the suit, divest the-defendant of his property in the hogs.
The action of replevin, as regulated by our statute (Swan’s Stat. of 1841, p. 784), differs essentially from the English action of replevin, and that of most of our sister states, and it is evident, that but little light can be cast upon the question, by reference to the-decisions of other states, based as they are upon statutory provisions- and rules of practice materially variant from ours.
In tho case of Jennings v. Johnson et al., 17 Ohio, 154, it was held by Reed, J., that the bond, as between the parties to the suit, “ takes the place of the property to the extent of the interest of the defendant in replevin;” and this holding is cited arguendo and with approbation, in Williams v. West, 2 Ohio St. 87, by Thurman, J. Upon the authority of these cases it was also-decided by Gholson, J., in 1 Handy’s Sup. Ct. 512, that the delivery of the property replevied, under the statute, to the plaintiff in replevin after bond given, invested him with the property and full power to sell and dispose of it at pleasure, and thereby *to confer a valid title upon the purchaser. But it is said, that the-rulings stated in 17 Ohio, and in 2 Ohio St., wore not necessary to a determination of those cases, and that they are, therefore, the mere dicta of the judges who uttered them. To a certain extent this may be true, but they are nevertheless entitled to great respect, and have been regarded by most if not all the inferior courts, ever since their promulgation, as determining tho effect of the statutory bond in our action of replevin—that, as to tho defendant in replevin, the bond is substituted for the property, and he must thereafter look to that alone for remuneration. And is not this a just construction of tho peculiar provisions of the act regulating actions of replevin above cited, when considered with reference to those principles of public policy, which attach to the *380 •possession and transmission of personal property, oftentimes of a perishable nature and designed for-present consumption, or expensive to keep and preserve, and imperatively requiring that the jus ■disponendi should at all times reside somewhere, and not be suspended for an indefinite period ? Upon filing the requisite affidavit, the property is taken from the possession of the defendant by ■the officer, who is required forthwith to ascertain the value of the property replevied, by the oath of two or more disinterested persons, and if bond with surety and conditioned as the statute re-quires, is given within twenty-four hours from the seizure, he is to deliver the property to the plaintiff in replevin; but if no such bond is given within that period, he is to redeliver the property to the defendant from whom it was taken. This bond is not conditioned for the restoration of the property to the defendant in any event; but ■simply that the plaintiff will prosecute his suit to effect and pay all ■costs and damages that may be awarded against him (in that suit). The plaintiff does not then stipulate that he will restore the property if the right thereto is determined against him, nor is the court authorized, upon such a finding, to enter % judgment for a return of the property. The only verdict which the jury can render, if the right of property is found to be in the defendant, is one for the value of the property as damages, and the only judgment ■the court can pronounce is for the recovery of the damages so found by the jury. It is clearly the policy of the law, for the reasons in part already adverted to, that there should always be some one ■•capable of transmitting the title to personal propei-ty to such as may desire to purchase it; and the case before us affords an apt illustration of the wisdom and policy of the rule. In August, 1849, the hogs were replevied, and, within twenty-four hours thereafter, the bond was given and the hogs delivered to the plaintiff in replevin; but the right of property in the hogs at the commencement ■of the action, was not determined for nearly three years thereafter, and from our experience in the law’s delay, the final determination of such controversies is frequently much more protracted. Now .the plaintiff claims that during all this period, that is from the commencement until the final termination of the action of replevin, no person had the legal right to sell and dispose of the hogs. The defendant in replevin certainly could not do so, and he claims that the plaintiff became and was the mere custodian of the property, but without any legal power or right to alienate it. The agreed *381 case shows that the hogs were fattened and fit for slaughter in November, 1849; and it is manifest that the hogs could not have been kept for even one year without great loss to some one, and, if •kept until the termination of the suit, the expense would have been, ruinous. And the propriety of the rule of public policy is still more apparent if applied to a replevin of articles of provision, which rapidly deteriorate by lapse of time, such as potatoes, fruit, etc., etc. Is it not. apparent that the construction given by th e Supreme Court under the ■ old constitution- and affirmed by that organized under the new, as to • the peculiar provisions of our act regulating actions of replevin, is the *true one—one which conforms to the language employed and the proceedings prescribed, while, at the same time, it consists with public policy as to the transmission of personal estate? We-think so; and were the question a new one, should now give to it. substantially the'same construction. If there is a dispute as to the; title to articles of personal property, and the party not in possession asserts his right to it in an action of replevin, then for a brief period,, at most but twenty-four hours, the jus disponendi is suspended, and then vests in the party to whom the properly is delivered. If to - the plaintiff in replevin, the bond, in double the appraised value, will amply indemnify the defendant, if the officer has done his • duty and the defendant himself has not been remiss in keeping the-security good; and if to the defendant, the action still proceeds to- • recover its value for the benefit of the plaintiff. We have been referred to the case of a suit in replevin by a temporary bailee against his bailor, who wrongfully deprives him -of the possession; and to the remarks of Thurman, J., in 2 Ohio St. supra, that in such ease the bailor, on the termination of the bailment, may, in. turn, replevy the goods, and it is urged that the rule that the 'bond. takes the place of tl»e property “to the extent of the interest of the defendant in replevin,” is inconsistent with any such recovery. The defendant, in the case supposed, would be the general owner, and the bond, under this rule, would divest him of his entire property - in the thing replevied, and he could not thereafter replevy it. We ■ concur in the intimation that, in such a case, replevin might be - maintained by the original bailor. The rule laid down in 17 Ohio, does not seem to have been worded so as to meet all the cases which, may arise under the action of replevin, and should doubtless be so-expressed as not to allow of a recovery on the bond for a greater interest than was claimed by the plaintiff in replevin. And where, as- *382 in the case at bar, the plaintiff claims the general property, “the bond takes the place of the property ^replevied to the extent •of the interest of the defendant in replevin;-” but where, as in the •••case supposed, the plaintiff only claims a special interest therein, the words, not exceeding the title or interest claimed by the plaintiff in :replevin, or other equivalent words, should be added. In that case, .a recovery upon the bond, if the plaintiff should fail, would be limited to the estate or interest claimed by him, and a recovery by the ■plaintiff would present no obstacle to a suit by the defendant on the termination of the bailment to regain the property if still withheld from him.
We have been referred to divers cases in New York and Massachusetts (9 Met. 444; 8 Ib. 298; 1 Pick. 287; 6 Hill, 560; 1 Comst. 165), to the effect that the institution of an action of replevin, and suing out the writ, giving bond, etc., do not divest the title of the defendant to the thing replevied. But as before intimated, the statutes of both those states are materially variant from ours. They provide substantially that the plaintiff shall give bond, among other things, for the restoration of the property, if the right is adjudged against him, and also that, in such event, the defendant shall have judgment for a return of the goods. Statutes of N. Y., revision 1829, vol. 2, p. 521; Revised Statutes of Mass, of 1836, 664. It is obvious that these decisions can shed no light upon the construction •of our statute in this particular.
The statute of New Hampshire provides that the plaintiff in replevin, before service of the writ, shall give bond to the sheriff, ■with sufficient sureties, in a sum not less than double the value of the property replevied, conditioned to prosecute his suit and to pay .all such damages and charges as may be awarded against him (Statutes of N. H., compilation of 1853, sec. “5, p. 520); and the form of the writ (page 464) requires him to deliver the property to the plaintiff if such bond is given. These provisions are nearly identical with those of our statute, and it was held in Bell v. Bartlett, 7 N. H. 191, that the judgment *in that state must be “for the value of the chattels, and not for a return of them.” See, .also, to same point, Whiting v. Levert, 2 Foster (N. H.), 10; Messer v. Bailey, 11 Ib. 9.
So in Pennsylvania, where, in replevin, it appears that the de•fendant has the election to surrender the property, or to retain it •on giving security, it was adjudged in Fisher v. Whoolery, 25 Penn. *383 St. 198, that, where the defendant elected to retain the property and give the bond, the plaintiff’s right to the property was forever gone, and that it was turned into a mere chose in action, a right to the value in damages. The court say: “But clearly, after the property is retained by the defendant on the claim of ownership and security given to the sheriff, there is no remedy at law by which the plaintiff can repossess himself of it.”
But it is unnecessary to multiply authorities. The question must mainly depend for its solution upon the provisions of the statute, and we are satisfied that the construction heretofore indicated, is the true one, and 'that the bonds, given in the suits in replevin set forth in the agreed case, as between the parties, took the place of the property to the extent of the interest of the defendant in replevin, and that the hogs, upon their delivery by the sheriff to the plaintiffs in replevin, became the property of the plaintiffs, divested of all right and interest of the defendant in replevin.
If the thing replevied is of a peculiar or factitious value, such a.s family portraits, heir-looms, personal mementos, and the like, the ■defendant will not necessarily be compelled to accept the appraisement in lieu of the article, as in such case, the chancery powers of the court might be invoked to restrain alienation and compel a return if the right thereto should be determined in his favor.
Lastly, it is insisted, that if the construction we have given to the act regulating actions of replevin, be the true one, then the act is unconstitutional, as directly «infringing the provisions of ■our (old) constitution, article 8, that “private property shall ever be held inviolate,” and also that “every person, for an injury done him in his lands, goods, person, or reputation, shall have remedy 'by the duo course of law.”
It is worthy of remark, that the cases before cited in Pennsylvania and New Hampshire, as well as those in Ohio, were all obnoxious to this objection, similar provisions being found in the constitutions of those states, and yet in none of them was this point even suggested, though in other respects the cases seem to have been severely contested and fully considered. In Arkansas, however, the objection seems to have been taken, and to have been summarily disposed of in two cases. Prater v. Frazer, 6 Eng. (Ark.) 249, and Freeman et al. v. Horen et al., 3 Ib. 355. In both these cases, it was urged that the action of replevin in the detinet, which deprived the party of his property, and after *384 ward tried the'right of property, was unconstitutional, under a similar provision of the constitution of that state. But the court, in few words, overrule the objection, saying, “It was intended as a, speedy and efficient remedy for the cases specified in the act, leaving the rights of the parties to be settled by the subsequent adjudication of the court.” The statute of Arkansas required a return of the property, if the right thereto was determined in favor of the defendant. Still the temporary transfer of the property, and control over it, from the defendant to the plaintiff, was, pro tanto, a. violation of the constitutional right of the owner, if the permanent transfer of our statute is to be so regarded. No other cases have been cited, nor have we been able to discover any in which the-point has been raised.
The plaintiff’s affidavit of his property and right of possession, and the defendant’s possession and • claim of right to the-same property, make a case of disputed ownership to the chattel replevied. Our statute directs its seizure and delivery over to the plaintiff, if he will give bond with ^surety to pay to defendant all damages; and if ho do so, then the disputed right of the defendant to the chattel becomes a mere right in action to-recover its value from the plaintiff and his sureties; but if the plaintiff fails to give bond, then the property is returned to the defendant, and the plaintiff’s right to the chattel is changed into a mere right to recover its value, in that action, from the defendant. The Pennsylvania statute, perhaps with more propriety, confers this right of election upon the defendant who has the property in possession, but attaches the same consequences to the retention of the property and giving the bond. 25 Penn. St. 197.- See also the-cases above cited in-the New Hamj)shire reports. These statutes, in furtherance of the principle of public policy above stated, at once remove the clog upon alienation which would otherwise remain until the disputed ownership is settled, by conferring the-right of property upon one or the other claimants under certain contingencies, and a right of action for its value upon the other. To hold that such a law is obnoxious to the constitutional provisions cited by the counsel for the plaintiff, would uproot a large part of ¡our remedial legislation. It might, with equal propriety, be applied to cases where a transfer of property is effected under proceedings in attachment, or where a title is divested by a failure to comply with our registry acts. Judgment for defendant.
*385 Brinkerhoit?, C. J., and Scott, J., concurred.
Gholson, J., did not sit in this case.